UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| LISA ANN KITTRELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| V. ) | No. 3:10-CV-535 |
| ) | (VARLAN/SHIRLEY) |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 11 and 12] and Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 13 and 14]. Plaintiff Lisa Ann Kittrell seeks judicial review of the decision of the Administrative Law Judge ("ALJ"), the final decision of the Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On August 15, 2006, the Plaintiff filed an application for a period of disability, disability insurance benefits, and/or supplemental security income, claiming a period of disability which began November 26, 2003. [Tr. 37]. After her application was denied initially and also denied upon reconsideration, the Plaintiff requested a hearing. On December 11, 2008, a hearing was held before an ALJ to review determination of Plaintiff's claim. [Tr. 6-29]. On April 28, 2009, the ALJ found that the Plaintiff was not disabled. [Tr. 46].

The Appeals Council denied the Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. The Plaintiff now seeks judicial review of the Commissioner's decision.

**I.     ALJ FINDINGS**

>   The ALJ made the following findings:
>
>   1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.
>
>   2. The claimant has not engaged in substantial gainful activity since November 26, 2003, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
>   3. The claimant has the following severe impairments: chronic back pain due to degenerative disc disease (status post discectomy 2004), asthma, chronic obstructive pulmonary disease (COPD), and a depressive disorder, NOS (20 CFR 404.1521 *et seq*. and 416.921*et seq.*).
>
>   4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525, 404.1526, 416.925 and 416.926).
>
>   5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant has the ability to lift and carry up to 10 pounds occasionally and 5 pounds frequently; sit 6 hours in an 8-hour workday and stand/walk 2 hours in an 8-hour workday (with sit/stand option). However, the claimant can only occasionally climb, stoop, kneel, crouch, and squat; and should avoid concentrated exposure to extreme cold, heat, wet and/or humidity as well as fumes, odors, dusts, gases, etc. She has the ability to adapt to workplace changes and is able to concentrate and persist for 2-hour segments. However, the claimant may have some, but not substantial, difficulties with concentration and persistence.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 18, 1970 and was 33 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from November 26, 2003 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 39-46].

## II.    DISABILITY ELIGIBILITY

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI benefits on the basis of financial need and either age, blindness, or disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). Plaintiff bears the burden of proof at the first four steps. Walters, 127 F.3d at 529. The burden shifts to the Commissioner at step five. Id. At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S.

4

137, 146 (1987)).

**III.    STANDARD OF REVIEW**

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

5

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff argues that the ALJ failed to properly consider the Plaintiff's pain and morbid obesity in determining the Plaintiff's residual functional capacity. [Doc. 12 at 8]. The Plaintiff, therefore, argues that the ALJ's disability determination is not supported by substantial evidence. [Doc. 12 at 1].

6

The Commissioner argues that the ALJ's finding regarding the Plaintiff's credibility and complaints of pain is supported by substantial evidence. [Doc. 14 at 6]. The Commissioner also maintains that the ALJ did not err in her residual functional capacity determination by failing to consider the Plaintiff's obesity. The Commissioner points out that the Plaintiff has not demonstrated that her obesity imposed additional limitation on her ability to work. [Doc. 14 at 11].

V.     ANALYSIS

The Court will address each of the Plaintiff's allegations of error in turn.

A.     **Allegations of Pain and the ALJ's Credibility Determination**

The Plaintiff argues that the ALJ did not properly consider the Plaintiff's "disabling pain." [Doc. 12 at 8]. The Plaintiff cites the Court to her testimony at the hearing before the ALJ and notes that she testified that: pain in her lower back causes her left leg to "give out" on her [Tr. 12]; she is not able to sit or stand for more than fifteen minutes at a time due to back pain [Tr. 12]; lifting five pounds puts pressure on her lower back and makes her sick to her stomach [Tr. 15]; due to pain, she can sit only an hour at a time for four hours in a workday [Tr. 16]; she must stop every fifteen or twenty minutes while watching a movie to move around so that her back "doesn't get stiff and hurt" [Tr. 18]; and she often has pain when she lies down to sleep [Tr. 20].

The Commissioner maintains that the ALJ properly noted inconsistencies between Plaintiff's subjective descriptions of her limitations and the objective medical evidence, her conservative treatment history, the effectiveness of her medications, and her activities of daily living. [Doc. 14 at 7 (citing Tr. 43-44)].

7

The Court of Appeals for the Sixth Circuit recently discussed the two-part test for evaluating pain, as contained in 20 C.F.R. § 404.1529 and Social Security Ruling 96–7p. The Court of Appeals explained:

> First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged; second, the ALJ must evaluate the intensity, persistence, and functional limitations of those symptoms by considering objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c); Soc. Sec. Rul. 96–7p, 1996 SSR LEXIS 4, at *5–8 (1996). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir.1997) (citing Villarreal v. Sec'y of Health and Human Servs., 818 F.2d 461, 463 (6th Cir.1987)).

Calvin v. Comm'r Soc. Sec., 2011WL 1976856 (6th Cir. May 23, 2011).

In this case, the ALJ followed the two-step procedure in evaluating the Plaintiff's complaints of pain. The ALJ reviewed the Plaintiff's testimony at length, including her reported restrictions on standing, sitting, walking, and lifting. [Tr. 41]. The ALJ then reviewed the medical evidence in the record including the Plaintiff's back pain treatment with Robert Davis, M.D., Joel Burroughs, M.D., and Mark Thomas, M.D. Among other things, the ALJ noted that x-rays and magnetic resonance imaging scans (MRIs) revealed only minimal degenerative spondylosis and mild to moderate left side defect at L5-S1. [Tr. 42]. The ALJ also cited to Dr.

8

Thomas's finding that the claimant had 5/5 motor function of her lower extremities and was able to flex, stand, and lateral bend with minimal discomfort. [Tr. 42].

The ALJ also discussed the Plaintiff's consultative evaluation with Jeffrey Summers, M.D., in which Dr. Summers found that the Plaintiff ambulated in a normal manner without the assistance of any device. [Tr. 42]. The ALJ noted that Dr. Summers assessed the Plaintiff as having back pain and found that she had a decreased range of motion of her lumbar spine. [Tr. 42]. She also noted that, after examining the Plaintiff, Dr. Summers opined that the Plaintiff would have difficulty bending, stooping, kneeling, squatting, climbing, and lifting more than twenty pounds, and he opined that she would have difficulty standing and walking more than six hours in an eight-hour workday. [Tr. 42]

The ALJ considered the claimant's other conditions including her asthma and COPD. After considering the medically determinable physical or mental impairments that could reasonably be expected to produce the symptoms alleged by the Plaintiff, the ALJ concluded that the impairments could reasonably be expected to cause the alleged symptoms. [Tr. 43]. She found, however, that the claimant's statements concerning the intensity, persistence, and limiting effects of the Plaintiff's symptoms were not credible, to the extent they limited the Plaintiff to a residual functional capacity capable of less than sedentary work, with certain additional limitations. [See Tr. 41, 43].

In support of this credibility determination, the ALJ explained:

> [T]he medical evidence fails to support a finding that the claimant is significantly limited in her ability to perform some type of work activity or activities of daily living. Although the claimant reported that her medications make her dizzy or jittery, she denied having any medication side effects in a completed Disability Report. The records indicate that the claimant complained of constant back pain, however, she indicated that she has gone

9

> camping and reported that she spends much of her day on the computer. Furthermore, the records indicate that the claimant has been treated conservatively for all of her symptoms and has not been prescribed any strong medications for pain. . . . [T]he objective findings fail to support the claimant's severity of pain. The claimant's treating physicians have indicated that her degenerative changes have been mild.
>
> The claimant also testified that she is able to lift about 20 pounds.

[Tr. 43-44].

The ALJ followed the test laid out in 20 C.F.R. § 404.1529 and Social Security Ruling 96–7p, and her credibility determination – specifically, as it relates to the Plaintiff's allegations of pain – is supported by substantial evidence in the record. For example, at the hearing before the ALJ, the Plaintiff rated her pain, without medication, as a five on a ten-point scale, and she testified that, with over-the-counter medication such as Aleve, her pain was at about a two on a ten-point scale. [Tr. 14]. The Plaintiff reported that she can dress and bathe herself, cook, wash dishes, do the laundry, mop, sweep, vacuum, go shopping three times per month, visit friends three times per month, use her computer, and watch television. [Tr. 16-17]. The Plaintiff said she was somewhat limited in how long she could persist in some of these household chores [Tr. 16-18], but in contrast, she reported that she sometimes went along on trips to Johnson City, Tennessee, approximately an hour and a half from her home to go fishing, [Tr. 18].

The ALJ's finding is supported by the medical evidence in the record. As noted above, the 2004 MRI scan revealed only mild to moderate left side defect at L5-S1, which was thought to be a combination of recurrent and residual disc issues with "a component of enhancement, compatible with postoperative scar or reaction." [Tr. 449]. Her 2008 lumbar spine x-rays revealed moderate to severe degenerative disc disease at L5-S1, but the disc disease was noted to have caused only "some mild wedging of L5 S1, no acute changes." [Tr. 748]. At a visit in

February 2005, Dr. Thomas found that the Plaintiff had weakly positive results on the right sitting root test, had 5/5 motor function in her lower extremity myotomes, and could flex and stand with lateral bend with minimal discomfort. [Tr. 374].

Following an examination on October 23, 2011, Dr. Summers observed that the Plaintiff's straight leg raising test was negative at the seated and supine positions. Her flexion at the waist was 65 degrees, her extension at the waist was 10 degrees, and her lateral flexion at the waist was 20 degrees to both the left and the right. [Tr. 507]. Dr. Summers found her range of motion was full in all other areas, her grip strength and strength in all major muscle groups was 5/5 bilaterally. [Tr. 507]. Dr. Summers found that the Plaintiff "ambulates in a normal manner with an upright station" and "utilizes the assistance of no external orthotic device." [Tr. 507].

Based upon these and other observations, Dr. Summers opined that the Plaintiff appeared "capable of sedentary and low to moderate intensity level activities in stable working environments." [Tr. 508]. Dr. Summers opined that the Plaintiff would have difficulty standing and walking for more than six hours in an eight-hour workday and would be limited in her ability to stoop, squat, etc. Dr. Summers found she "could tolerate all other work related activities in this regard." [Tr. 508]. He also observed that she had full and unrestricted use of both upper extremities. [Tr. 508].

The ALJ's credibility determination and evaluation of the Plaintiff's complaints of pain are supported by substantial evidence. The ALJ followed the two-step procedure outlined in 20 C.F.R. § 404.1529 and Social Security Ruling 96–7p, and determined that though the Plaintiff had a medically determinable physical or mental impairment that can reasonably be expected to produce the symptoms alleged, the alleged intensity, persistence, and functional limitations of those symptoms were not consistent with the objective medical evidence and other evidence in

11

the record. The ALJ explained her findings appropriately, and the ALJ's finding in this regard is supported by substantial evidence.

Therefore, the undersigned finds that the Plaintiff's allegation that the ALJ erred in her credibility determination and in the weight afforded to the Plaintiff's complaints of pain is not well-taken.

### B.     Limiting Effect of Plaintiff's Obesity

The Plaintiff also alleges that "the ALJ failed to consider Plaintiff's morbid obesity and the effect it would have on her other impairments as required." [Doc. 12 at 13]. In support of this position, the Plaintiff cites the Court to Social Security Ruling 02-1p.

The Commissioner responds that Social Security Ruling 02-1p does not provide any particular procedural mode of analysis for obese disability claimants. [Doc. 14 at 11]. The Commissioner maintains that Social Security Ruling 02-1p includes examples of limitations that obesity can cause and requires the ALJ to determine whether a claimant's obesity actually causes limitations. The Commissioner argues that in this case the Plaintiff's obesity did not cause any limitations and none of the Plaintiff's treating physicians so indicated. [Doc. 14 at 11].

Social Security Ruling 02-1p contains a lengthy explanation of how the Commissioner will treat obesity when applying the five-step disability determination procedure laid out above. In pertinent part, it notes:

> As with any other medical condition, we will find that obesity is a "severe" impairment when, alone or in combination with another medically determinable physical or mental impairment(s), it significantly limits an individual's physical or mental ability to do basic work activities. . . . Because there is no listing for obesity, we will find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself,

12

> meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. . . . Obesity can cause limitation of function. The functions likely to be limited depend on many factors, including where the excess weight is carried. An individual may have limitations in any of the exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling. It may also affect ability to do postural functions, such as climbing, balance, stooping, and crouching.

SSR 02-1p.

In addressing an allegation of error similar to the one now before the Court, the Court of Appeals for the Sixth Circuit explained:

> [The Plaintiff] contends that the ALJ committed a procedural error by failing to follow the procedure outlined in Social Security Ruling 02-01p. Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments, 'may' increase the severity of the other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants.

Bledsoe v. Barnhart, 165 Fed. App'x 408, 411-412 (6th Cir. 2006)

At the hearing before the ALJ, the Plaintiff cited three medical impairments that kept her from working: (1) her lower back pain; (2) her diabetes; and (3) her asthma. [Tr. 12]. Most likely all three of these conditions are related to and/or exacerbatyed by the Plaintiff's obesity; the Plaintiff's obesity almost certainly contributes to and exacerbates her lower back pain and diabetes. The ALJ considered all of the medical records detailing these conditions, which implicitly incorporate the extent to which Plaintiff's obesity exasperates the other impairments. [Tr. 42-43].

As Social Security Ruling 02-1p indicates, persons with obesity may have limitations in exertional functions such as sitting, standing, walking, lifting, carrying, pushing, and pulling.

13

They may also have a diminished ability to do postural functions, such as climbing, balance, stooping, and crouching. Consistent with these potential limitations, the ALJ limited the Plaintiff to: carrying five pounds frequently and ten pounds occasionally; sitting for six hours in an eight-hour workday, with a sit/stand option; only occasional climbing, stooping, kneeling, crouching, and squatting; and limited exposure to extreme cold, heat, wet/humidity, fumes, odors, dusts, and gases. [Tr. 41]. The Plaintiff has not cited the Court to any physician, treating or otherwise, that found her obesity affected her residual functional capacity or that found her obesity reduced her residual functional capacity below the level of capacity found by the ALJ, so as to undermine the validity of the ALJ's finding.

Based upon the foregoing, the Court finds that the ALJ complied with Social Security Ruling 02-01p. Therefore, the undersigned finds that the Plaintiff's allegation that the ALJ erred in her residual functional capacity determination or her consideration of Plaintiff's obesity is not well-taken.

14

Case 3:10-cv-00535-TAV-CCS   Document 15   Filed 12/05/11   Page 14 of 15   PageID #: 81

## VI. CONCLUSION

Accordingly, the Court finds that the ALJ properly reviewed and weighed the evidence to determine Plaintiff is capable of performing sedentary work with certain enumerated limitations. Substantial evidence supports the ALJ's findings and conclusions. Therefore, it is hereby **RECOMMENDED**[1] that Plaintiff's Motion For Summary Judgment **[Doc. 11]** be **DENIED** and that the Commissioner's Motion for Summary Judgment **[Doc. 13]** be **GRANTED**.

Respectfully submitted,

    s/ C. Clifford Shirley, Jr.
United States Magistrate Judge

---

[1] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).